# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| **AFC ENTERPRISES, INC.,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **THG RESTAURANT GROUP LLC,** and | ) |
| | ) |
| **WOODROW A. HALL** | ) |
| **Defendants.** | ) |

**CIVIL ACTION NO.:**

**TWT**

**1 10·CV-1772**

## COMPLAINT

AFC Enterprises, Inc. ("AFC"), for its Complaint, states as follows:

### Preliminary Statement

This is an action for declaratory judgment, service mark infringement, unfair competition, breach of contract, and unjust enrichment arising out of the defendant's unauthorized use of the plaintiff's marks and franchise system, after the valid termination of its license to use the marks. The defendant THG

Restaurant Group of Chicago, Inc. ("THG") operated eight franchised POPEYES restaurants in the Chicago area under the trademarks and service marks of the plaintiff, AFC Enterprises, Inc. ("AFC"), the franchisor of the POPEYES restaurant system. This action relates only to one of them, located at 7617 S. Racine Ave., Chicago, IL (the "Racine Ave. Restaurant"). (The remaining seven restaurants are no longer operated by THG, and are the subject of a state court action instituted by THG in 2009 that is unrelated to this dispute).

In 2009, THG began failing to pay royalties and other amounts due to AFC for the Racine Ave. Restaurant. AFC placed THG in default for its failure to pay, in accordance with the provisions of the franchise agreement. The parties entered into a payment plan, but THG defaulted on its obligations under that plan as well. AFC placed THG in default no fewer than four additional times over the next year for both monetary and operational defaults. By letter dated June 7, 2010, AFC exercised its contractual right to terminate the franchise agreement for THG's failure to cure its defaults. Nonetheless, THG is continuing to operate the Racine Ave. Restaurant under AFC'S trademarks and service marks and is holding itself out to the public as a legitimate, licensed member of the POPEYES franchise system. THG's continued operation of the Racine Ave. Restaurant under AFC's marks poses a threat to the goodwill of the POPEYES restaurant system as a

2

whole, especially in light of THG's failure to comply with operational standards prior to the termination of its franchise agreement. Accordingly, AFC seeks injunctive relief to protect its goodwill and to protect consumers, as well as declaratory and monetary relief.

## THE PARTIES AND VENUE

1. AFC is a Minnesota corporation with its principal place of business in Atlanta, Georgia.

2. On information and belief, THG is a Georgia limited liability company with its principal place of business in Chicago, Illinois.

3. The defendant Woodrow A. Hall ("Hall") is a citizen and resident of Georgia. Hall is the principal of THG and, on information and belief, controls the affairs of THG.

4. Venue in this Court is proper because, upon information and belief, the defendants reside in this district and a substantial part of the events or omissions giving rise to these claims occurred in this district.

## THE POPEYES RESTAURANT SYSTEM

5. AFC is the franchisor of the POPEYES quick service restaurant system. AFC operates, and licenses others to operate, quick service restaurants under the federally-registered, famous service mark POPEYES and related marks ("the

POPEYES Marks"). POPEYES restaurants offer distinctive spicy fried chicken, biscuits, Cajun-style side dishes and related items to the public, and are operated in accordance with AFC's business and operating procedures. The POPEYES Marks have come to identify in the public mind the distinctive products and services made available in licensed POPEYES restaurants. AFC and its franchisees currently operate more than 1,900 POPEYES restaurants in the United States and abroad.

6. The POPEYES Marks include the following trademarks and service marks registered in the United States Patents and Trademark Office:

| | Reg./App. Number | Date of Reg./App. | |
|---|---|---|---|
| **POPEYES**<br><br>**Federal Service Mark**<br>(Restaurant Services) | 1,021,254 | 9/23/75 | * |
| **Federal Trademark**<br>(Fried Chicken) | 1,030,944 | 1/20/76 | * |
| **Federal Trademark**<br>(Poultry, shell fish, potatoes, corn, cabbage carrots and shallots; and shortening for use in preparation of food and for consumption on or off the premises.) | 1,121,096 | 6/26/79 | * |
| **Federal Trademark**<br>(Condiments; pastries; flour and batter mix; matches) | 1,121,699 | 7/10/79 | * |

|  | Reg./App. Number | Date of Reg./App. | |
|---|---|---|---|
| **Federal Trademark and Service Mark**<br>(Disposable cups and food containers; prepared chicken, shellfish, vegetables, shortening; condiments; pastries, flour, batter mix; desserts; fresh fruits and vegetables; restaurant services) | 1,267,567 | 2/21/84 | * |
| **POPEYES FAMOUS FRIED CHICKEN**<br><br>**Federal Trademark**<br>(Fried Chicken) | 1,257,702 | 11/15/83 | * |
| **Federal Service Mark & Design**<br>(Concurrent)<br>(Restaurant Services) | 1,257,958 | 11/15/83 | * |
| **POPEYES CHICKEN & BISCUITS & design**<br><br>**Federal Service Mark & Design**<br>(Restaurant Services) | 2,000,593 | 9/17/96 | |
| **Federal Service Mark & Design**<br>(Chicken Products) | 2,095,493 | 9/9/97 | |
| **Federal Service Mark & Design**<br>(Prepared Chicken Products) | 2,242,910 | 5/4/99 | |

7.    The above referenced registrations designated with an asterisk have become incontestable, pursuant to 15 U.S.C. § 1115.

8.    Licensed POPEYES restaurants are operated in accordance with detailed specifications relating to food preparation, holding times, service times,

5

required menu items, recipes, uniforms, cleanliness requirements, and virtually all other elements relating to the operation of a quick service food restaurant.

## THG'S POPEYES FRANCHISE AGREEMENT

9.      THG executed a POPEYES franchise agreements governing the operation of the Racine Ave. Restaurant under the POPEYES Marks (the "Franchise Agreement"), which was effective December 22, 2008. The Racine Ave. Restaurant is identified by POPEYES Unit No. 2840. A copy of the Franchise Agreement is attached hereto as Exhibit 1.

10.     Section 3.01 of the Franchise Agreement provides that

> Franchisee shall pay to Franchisor the following: . . . .
>
> A recurring, non-refundable royalty fee of five percent (5%) of Gross Sales (as defined herein) during the term of this Agreement, payable weekly . . . on the Gross Sales of the preceding week.

11.     Section 3.02 of the Franchise Agreement provides that

> Franchisee, recognizing the value of advertising and the importance of the standardization of advertising and promotion to the goodwill and public image of the System, agrees to pay to the Popeyes Advertising Fund ("Advertising Fund") a recurring, non-refundable advertising fund contribution ("Advertising Fund Contribution") in an amount to be determined by Franchisor, in its sole discretion, not to exceed three percent (3%) of the Gross Sales . . . for the preceding week, payable weekly. . . .

12. Section 3.03 of the Franchise Agreement provides that

> If any monetary obligations owed by Franchisee to Franchisor and its subsidiaries and affiliates are more than seven (7) days overdue, Franchisee shall, in addition to such obligations, pay to Franchisor a sum equal to one and one-half percent (1.5%) of the overdue balance per month, or the highest rate permitted by law, whichever is less, from the date said payment is due.

13. Pursuant to Section 15.03 of the Franchise Agreement (as modified by an Amendment to comply with the Illinois Franchise Disclosure Act), THG is afforded thirty days after receipt from AFC of a written Notice of Default within which to cure a default of Section III of the Franchise Agreement. If THG fails to cure the default within the thirty-day cure period, AFC has the right to terminate the Franchise Agreement.

14. Pursuant to Section 15.02(L) of the Franchise Agreement and governing law, if THG repeatedly fails to comply with any provision of the Franchise Agreement, AFC may terminate the Franchise Agreement without opportunity to cure, effective immediately upon written notification of termination to THG.

15. Hall executed a personal guaranty of all of THG's obligations under the Franchise Agreement.

## THE BREACH AND TERMINATION OF THG'S FRANCHISE AGREEMENT

16.     On or about April 2, 2009, AFC sent THG a Notice of Default, in accordance with the Franchise Agreement, because of THG's failure to make certain royalty and advertising fund payments to AFC pursuant to Section III of the Franchise Agreement.   In addition, THG failed to pay the finance charges that had accrued on these unpaid fees.  AFC afforded THG thirty (30) days from receipt within which to cure its default.

17.     On or about April 24, 2009, AFC and THG entered into a payment plan (the 'Payment Plan"), pursuant to which THG was deemed to have cured its default and agreed to make payments to AFC in accordance with a schedule set forth therein.

18.     On or about July 2, 2009, AFC sent THG another Notice of Default, in accordance with the Franchise Agreement, because of THG's failure to make certain royalty and advertising fund payments to AFC pursuant to Section III of the Franchise Agreement, and its failure to abide by the terms of the payment plan. AFC afforded THG thirty (30) days from receipt within which to cure its default. AFC subsequently agreed to give THG an additional 14 days in which to cure.

19.     In the Spring and Fall of 2009, THG failed several operational assessments, including inspections for food safety and operational issues.  On or

8

about November 25, 2009, AFC sent THG a Notice of Default, in accordance with the Franchise Agreement, because of THG's failure to pass two operational assessments conducted by AFC's inspectors, in September and November 2009. AFC afforded THG thirty (30) days from receipt within which to cure its default.

20.    On or about February 8, 2010 (the "February 2010 Notice"), AFC sent THG another Notice of Default, by Fed Ex Overnight Delivery, in accordance with the Franchise Agreement, because of (a) THG's failure to cure certain of the financial defaults set forth in the July 2009 Notice; (b) THG's failure of a follow up operational assessment conducted on January 21, 2010; and (c) its continuing failure to pay royalties, ad fund fees, and other financial obligations to AFC. AFC afforded THG thirty (30) days from receipt within which to cure its defaults.

21.    THG never cured any of the defaults set forth above. When THG failed to cure its defaults set forth in the February 2010 Notice, AFC gave THG yet another chance. On or about April 7, 2010, AFC sent THG another Notice of Default by FedEx Overnight Delivery, in accordance with the Franchise Agreement, again setting forth THG monetary and operational defaults under the Franchise Agreement, and affording THG thirty (30) days from receipt within which to cure the default (the "April 2010 Notice"). A copy of the April 2010 Notice is attached as Exhibit 2.

22.    By written notice dated June 7, 2010 (the "Notice of Termination"), sent to THG by FedEx Overnight Delivery, AFC exercised its right under the Franchise Agreement for THG's failure to cure its defaults as set forth in the February Notice.  In accordance with the terms of the Franchise Agreement, the Franchise Agreement terminated no later than THG's receipt of the Notice of Termination on June 8, 2010.  In the Notice of Termiantion, AFC demanded that THG cease using the POPEYES Marks and comply with the post-termination provisions set forth in the Franchise Agreement.  A copy of the Notice of Termination is attached as Exhibit 3.

23.    Hall received copies of each of the notices referred to in this Complaint.

### THG'S BREACH OF THE POST-TERMINATION PROVISIONS OF THE FRANCHISE AGREEMENT AND UNAUTHORIZED USE OF THE POPEYES MARKS AND SYSTEM

24.    THG expressly agreed in Section XVI of the Franchise Agreement that, upon termination it would cease to operate the Racine Ave. Restaurant as POPEYES restaurant, cease use of the POPEYES Marks, de-identify the Racine Ave. Restaurant premises, return the POPEYES operations manuals and otherwise abide by the post-termination provisions contained in the Franchise Agreement.  These provisions require the following:

> A.    Franchisee shall immediately cease to operate the Franchised Unit as a Popeyes restaurant, and shall not

thereafter, directly or indirectly, represent to the public that the restaurant is a Popeyes restaurant.

B.     Franchisee shall immediately and permanently cease to use, by advertising or in any manner whatsoever, any menus, recipes, confidential food for formulae, equipment, methods, procedures, and the techniques associated with the System and with Franchisor's Proprietary Marks, and Franchisor's other trade names, trademarks and service marks associated with the Popeyes System.  In particular, and without limitation, Franchisee shall cease to use all signs, furniture, fixtures, equipment, advertising materials, stationery, forms and any other articles which display the Proprietary Marks.

C.     Franchisee agrees, in the event it continues to operate or subsequently begins to operate restaurants or other businesses, not to use any reproduction, counterfeit, copy, or colorable imitation of the Proprietary Marks in conjunction with such other business which is likely to cause confusion or mistake or to deceive, and further agrees not to utilize any trade dress, designation of origin, description, or representation which falsely suggests or represents an association or connection with Franchisor.

D.     Franchisee agrees . . . to make such modifications or alterations to the Franchised Unit premises immediately upon termination or expiration of this Agreement or cessation of operation of the Franchised Business as may be necessary to prevent the operation of any businesses thereon by Franchisee or others in derogation of this Section XVI, and shall make such specified additional changes thereto as Franchisor may reasonably request for that purpose.  The modifications and alterations required by this Section XVI shall include, but are not limited to, removal of all trade dress and other indicia of the Popeyes System.

E.     Franchisee shall immediately pay all sums owing to Franchisor and its subsidiaries and affiliates. In the event of termination for any default by Franchisee, such sums shall include all damages, costs and expenses, including reasonable attorneys' fees, incurred by Franchisor as a result of the default.

F.     Franchisee shall immediately turn over to Franchisor the Manual, all other manuals, records, files, instructions, correspondence and any and all other materials relating to the operation of the Franchised Business in Franchisee's possession and all copies thereof (all of which are acknowledged to be Franchisor's property) and shall retain no copy or record of any of the foregoing, with the exception of Franchisee's copy of the Agreement between Franchisor and Franchisee, any correspondence between the parties, and any other documents which Franchisee reasonably needs for compliance with any provision of law.

25.     In addition to these post-termination obligations, Section XVI also provides that "Franchisee shall pay to Franchisor all damages, costs and expenses, including reasonable attorney's fees, incurred by Franchisor in seeking recovery of damages caused by any action of Franchisee in violation of, or in obtaining injunctive relief for the enforcement of, any portion of this Section XVI."

26.     As a consequence of the valid termination of the Franchise Agreement, THG is required to abide by these post-termination obligations.

27.   THG is continuing to operate the formerly franchised Racine Ave. Restaurant and to hold itself out to the public as a franchisee of the POPEYES System.  On information and belief, Hall is causing THG to do so.

28.   THG's failure to abide by the post-termination obligations required under the Franchise Agreement and continued use of the POPEYES Marks and the POPEYES system in connection with restaurant services being offered at the site of the formerly franchised Racine Ave. Restaurant has caused, and is continuing to cause, irreparable harm to AFC.

29.   In addition, THG currently owes AFC, approximately $ 40,845.27 in past due royalty fees, advertising fund fees and finance charges.

30.   Hall is personally liable for all of THG's obligations to AFC.

## COUNT ONE
### (Declaratory Judgment: Termination of the Franchise Agreement)

31.   AFC realleges each and every other paragraph of this Complaint.

32.   In the April 2010 Notice, as well as in each of the previous default notices, AFC informed THG that the Franchise Agreement for the Racine Ave. Restaurant would terminate if THG did not cure the violations of the Franchise Agreement within thirty (30) days of THG's receipt of the Notice of Default.

33.   THG failed to cure its defaults within thirty (30) days of its receipt of the April 2010 Notice, or at any time.

34.    AFC has notified THG that the Franchise Agreement is terminated and has demanded that THG cease operating the Racine Ave. Restaurant as a POPEYES restaurant and comply with the post-termination obligations under the Franchise Agreement.

35.    In view of THG's filing of a an action in state court arising out of the termination of its other POPEYES franchise agreement, as well as THG's continued operation of the Racine Ave. Restaurant using the POPEYES Marks and System, AFC has a real and reasonable apprehension that THG will file an action in court arising out of the termination of the Racine Ave. Franchise Agreement. An actual and justiciable controversy therefore exists between AFC and THG.

36.    Pursuant to 28 U.S.C. §§ 2201 and 2202 and 735 ILCS 5/2-701, AFC seeks a declaratory judgment that the Franchise Agreement were validly terminated by AFC in accordance with the provisions of that agreement and the Illinois Franchise Disclosure Act.

WHEREFORE, on Count One, AFC demands entry of judgment in its favor declaring the Franchise Agreement validly terminated, awarding AFC its costs in prosecuting these claims, including its reasonable attorneys' fees incurred in accordance with Section XVI of the Franchise Agreement, and awarding AFC such other and further relief as the Court may deem appropriate.

## COUNT TWO
### (Breach of Contract - Franchise Agreement)

37. AFC realleges each and every other paragraph of this Complaint.

38. THG's failure to pay royalty fees, advertising fees and finance charges in past-due amounts for the Racine Ave. Restaurant constitutes a breach of the Franchise Agreement.

39. AFC has been damaged by THG's breach of the Franchise Agreement in an amount to be proved at trial, but not less than $ 40.845.27.

40. Hall is personally liable for THG's obligations.

WHEREFORE, on Count Two, AFC demands entry of judgment in its favor, awarding AFC its damages arising out of THG's breaches of the Franchise Agreement, awarding AFC its costs in prosecuting these claims, including its reasonable attorneys' fees incurred in accordance with Section XVI of the Franchise Agreement, and awarding AFC such other and further relief as the Court may deem appropriate.

## COUNT THREE
### (Breach of Contract - Post-Termination Obligations)

41. AFC realleges each and every other paragraph of this Complaint.

42. Despite the valid termination of the Franchise Agreement, THG has continued to operate the Racine Ave. Restaurant utilizing the POPEYES Marks in a

manner likely to cause confusion or to deceive and which falsely suggests an association or connection with the POPEYES restaurant system in violation of Section XVI of the Franchise Agreement.

43. THG has further breached Section XVI of the Franchise Agreement by failing to pay all sums owing to AFC.

44. THG has further breached Section XVI of the Franchise Agreement by failing to surrender to AFC the manuals and other materials relating to the formerly-licensed business.

45. The conduct set forth herein has caused and continues to cause irreparable harm and damage to AFC and the POPEYES Marks and restaurant system.

46. In addition, AFC has sustained actual damages, costs, and attorneys' fees as a result of the THG's breach of the contractual post-termination obligations in an amount that has yet to be determined.

47. Hall is personally liable for THG's obligations.

WHEREFORE, on Count Three of this Complaint, AFC demands entry of judgment in its favor awarding the following relief:

A. Preliminarily and permanently enjoining THG, and all those acting in concert with it, including Hall as well as its officers, members, agents, servants,

employees, and attorneys, from:

(i)     using the POPEYES Marks in connection with the advertising, promotion or sale of any product or service;

(ii)    operating or doing business under any name or mark, or in any manner that is likely to give the public the impression that the Racine Ave. Restaurant is licensed by AFC or otherwise associated with the POPEYES restaurant system;

(iii)   failing to make any changes and alterations to the formerly-licensed Racine Ave. Restaurant required to de-identify those Racine Ave. Restaurant;

(iv)    committing any other act that infringes the POPEYES Marks or otherwise unfairly competes with AFC or the POPEYES restaurant system.

B.      Ordering THG and Hall to file with the Court and serve on counsel for AFC, within five (5) calendar days after service of any injunction issued herein, a written report setting forth in detail, under oath, the manner and form in which it has complied with such injunction;

C.      Ordering specific performance against THG, and Hall of the post-termination obligations in the Franchise Agreement;

17

D.     Awarding AFC its damages arising out of THG's breaches of the Franchise Agreement;

E.     Awarding AFC its costs in prosecuting these claims, including its reasonable attorneys' fees incurred in accordance with Section XVI of the Franchise Agreement; and

F.     Awarding AFC such other and further relief as the Court may deem appropriate.

## COUNT FOUR
### (Trademark and Service Mark Infringement)

48.     AFC realleges each and every other paragraph of this Complaint.

49.     THG's continued use of the POPEYES Marks without authorization or license from AFC is likely to cause confusion in the public mind concerning the source, affiliation, or sponsorship of goods and services being offered under the POPEYES Marks.

50.     THG is willfully, intentionally, and knowingly using trademarks, service marks and designations that are identical to, substantially indistinguishable from, or confusingly similar to the POPEYES Marks in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114.

51. On information and belief, Hall is causing THG to engage in the infringement set forth herein and is therefore liable as a contributory infringer.

52. THG's conduct is causing irreparable injury to AFC's reputation and goodwill, which will continued unabated unless enjoined by this Court. In addition, THG's conduct is causing monetary damage to AFC in an amount to be proved at trial.

WHEREFORE, on Count Four of this Complaint, AFC demands entry of judgment in its favor awarding the following relief:

A. Preliminarily and permanently enjoining THG, and all those acting in concert with it, including Hall and its officers, members, agents, servants, employees, and attorneys, from:

(i) using the POPEYES Marks in connection with the advertising, promotion or sale of any product or service;

(ii) operating or doing business under any name or mark, or in any manner that is likely to give the public the impression that the Racine Ave. Restaurant is licensed by AFC or otherwise associated with the POPEYES restaurant system; and

(iii) committing any other act that infringes the POPEYES Marks or

otherwise unfairly competes with AFC or the POPEYES restaurant system;

B.      Ordering THG and Hall to file with the Court and serve on counsel for AFC, within five (5) calendar days after service of any injunction issued herein, a written report setting forth in detail, under oath, the manner and form in which it has complied with such injunction;

C.      Awarding AFC, pursuant to 15 U.S.C. § 1117, (a) THG's profits, (b) AFC's damages, and (c) the costs of the action;

D.      Awarding AFC treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a) and (b);

E.      Awarding AFC such other and further relief as the Court may deem appropriate.

### COUNT FIVE
### (Federal Unfair Competition)

53.     AFC realleges each and every other paragraph of this Complaint.

54.     THG's unauthorized use of the POPEYES Marks, and holding itself out as a duly licensed member of the POPEYES System, constitute false designation of origin, false or misleading descriptions of fact, and false or misleading representations of fact, which are likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association between THG and AFC, or as to the

20

origin, sponsorship, or approval of the goods or services being offered by THG, or as to AFC's approval of THG's commercial activities.

55. THG's conduct violates section 43(a) of the Lanham Act, 15 U.S.C. § 1125 (a).

56. On information and belief, Hall is causing THG to engage in the unfair competition set forth herein.

57. THG's conduct is causing irreparable injury to AFC's reputation and goodwill, which will continued unabated unless enjoined by this Court. In addition, THG and Hall's conduct is causing monetary damage to AFC, in an amount to be proven at trial.

WHEREFORE, on Count Five of this Complaint, AFC demands entry of judgment in its favor awarding the following relief:

A. Preliminarily and permanently enjoining THG, and all those acting in concert with it, including Hall and its officers, members, agents, servants, employees, and attorneys, from:

(i) using the POPEYES Marks in connection with the advertising, promotion or sale of any product or service;

(ii) operating or doing business under any name or mark, or in any

manner that is likely to give the public the impression that the Racine Ave. Restaurant is licensed by AFC or otherwise associated with the POPEYES restaurant system; and

(iii) committing any other act that infringes the POPEYES Marks or otherwise unfairly competes with AFC or the POPEYES restaurant system;

B.     Ordering THG to file with the Court and serve on counsel for AFC, within five (5) calendar days after service of any injunction issued herein, a written report setting forth in detail, under oath, the manner and form in which it has complied with such injunction;

C.     Awarding AFC, pursuant to 15 U.S.C. § 1117, (a) THG's profits, (b) AFC's damages, and (c) the costs of the action;

D.     Awarding AFC treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a) and (b);

E.     Awarding AFC such other and further relief as the Court may deem appropriate.

## COUNT SIX
### (Common Law Trademark and Service Mark Infringement)

58.    AFC realleges each and every other paragraph of this Complaint.

59. The POPEYES Marks are distinctive and have developed a secondary meaning in the public mind in that consumers have come to know and recognize the POPEYES Marks as identifying the operation of restaurants by AFC and its franchisees. The POPEYES Marks have become known by the public as indicative of the goods and services provided by AFC and its franchisees at POPEYES restaurants.

60. The public is likely to be confused, deceived or otherwise manipulated by THG's unauthorized use of the POPEYES Marks. Therefore, PRM's use of the POPEYES Marks without right, license, or authorization constitutes common law service mark infringement.

61. On information and belief, Hall is causing THG to engage in the infringement set forth herein.

62. THG's conduct is causing irreparable injury to AFC's reputation and goodwill, which will continue unabated unless enjoined by this Court. In addition, the THG's and Hall's conduct is causing monetary damage to AFC, in an amount to be proven at trial.

WHEREFORE, on Count Six of this Complaint AFC demands entry of judgment in its favor awarding the following relief:

A. Preliminarily and permanently enjoining THG, and all those acting in

concert with it, including Hall and its officers, members, agents, servants, employees, and attorneys, from:

(i)     using the POPEYES Marks in connection with the advertising, promotion or sale of any product or service;

(ii)     operating or doing business under any name or mark, or in any manner that is likely to give the public the impression that the Racine Ave. Restaurant is licensed by AFC or otherwise associated with the POPEYES restaurant system; and

(iii)     committing any other act that infringes the POPEYES Marks or otherwise unfairly competes with AFC or the POPEYES restaurant system;

B.     Ordering THG and Hall to file with the Court and serve on counsel for AFC, within five (5) calendar days after service of any injunction issued herein, a written report setting forth in detail, under oath, the manner and form in which it has complied with such injunction;

C.     Awarding AFC its damages from THG and Hall's infringement;

D.     Awarding AFC its costs and attorneys' fees; and

E.     Awarding AFC such other and further relief as the Court may deem appropriate.

## COUNT SEVEN
### (Common Law Unfair Competition)

63.     AFC realleges each and every other paragraph of this Complaint.

64.     THG's conduct constitutes unfair competition under applicable state law.

65.     On information and belief, Hall is causing THG to engage in the unfair competition set forth herein.

66.     THG's conduct is causing irreparable injury to AFC's reputation and goodwill, which will continue unabated unless enjoined by this Court. In addition, the THG's conduct is causing monetary damage to AFC, in an amount to be proven at trial.

WHEREFORE, on Count Seven of this Complaint AFC demands entry of judgment in its favor awarding the following relief:

A.     Preliminarily and permanently enjoining THG, and all those acting in concert with it, including Hall and its officers, members, agents, servants, employees, and attorneys, from:

(i)     using the POPEYES Marks in connection with the advertising, promotion or sale of any product or service;

(ii)     operating or doing business under any name or mark, or in any

manner that is likely to give the public the impression that the Racine Ave. Restaurant is licensed by AFC or otherwise associated with the POPEYES restaurant system; and

(iii) committing any other act that infringes the POPEYES Marks or otherwise unfairly competes with AFC or the POPEYES restaurant system;

B. Ordering THG and Hall to file with the Court and serve on counsel for AFC, within five (5) calendar days after service of any injunction issued herein, a written report setting forth in detail, under oath, the manner and form in which it has complied with such injunction;

C. Awarding AFC its damages from THG and Hall's unfair competition;

D. Awarding AFC its costs and attorneys' fees; and

E. Awarding AFC such other and further relief as the Court may deem appropriate.

## COUNT EIGHT
### (Unjust Enrichment)

67. AFC realleges each and every other paragraph of this Complaint.

68. THG and Hall's unauthorized use of the POPEYES Marks in operating the Racine Ave. Restaurant and holding itself out as a duly licensed member of the

POPEYES System has resulted in the unjust enrichment of THG in an amount that has yet to be determined.

WHEREFORE, on Count Eight of this Complaint, AFC demands entry of judgment in its favor awarding AFC the amount by which THG and Hall have been unjustly enriched by their wrongful use of the POPEYES Marks and POPEYES System, AFC's costs in prosecuting these claims, including its reasonable attorneys' fees incurred, and such other and further relief as the Court may deem appropriate.

[SIGNATURE PAGE FOLLOWS]

Respectfully submitted,

Corey N. Cutter
Georgia Bar No. 209905
Taylor English Duma LLP
1600 Parkwood Circle, Suite 400
Atlanta, Georgia 30339
Direct: 770.434.6881
Main: 770.434.6868
Fax: 770.434.7376
ccutter@taylorenglish.com

- and -

*Of Counsel:*
James C. Rubinger
Benjamin B. Reed
PLAVE KOCH PLC
12355 Sunrise Valley Drive
Suite 230
Reston, VA 20191
Direct: 703.774.1208
Main: 703.774.1200
Fax: 703.774.1201
jrubinger@plavekoch.com

Attorneys for Plaintif AFC Enterprises,
Inc.

Dated: June 9, 2010