IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AFC ENTERPRISES, INC.,<br><br>    Plaintiff,<br><br>        v.<br><br>THE RESTAURANT GROUP LLC, et al.,<br><br>    Defendants. | CIVIL ACTION FILE<br>NO. 1:10-CV-1772-TWT |

ORDER

This is a trademark infringement action. It is before the Court on the Defendants' Motion to Dismiss [Doc. 15]; the Defendants' Motion to Stay the Preliminary Injunction Pending Appeal [Doc. 30]; and the Plaintiff's Motion for an Order to Show Cause [Doc. 35]. For the reasons set forth below, the Court DENIES the Defendants' Motion to Dismiss [Doc. 15], DENIES the Defendants' Motion to Stay the Preliminary Injunction Pending Appeal [Doc. 30], and DENIES the Plaintiff's Motion for an Order to Show Cause [Doc. 35].

I. Background

The Plaintiff, AFC Enterprises, Inc. ("AFC"), is the franchisor of the POPEYES restaurant system. AFC licenses others to operate restaurants under the POPEYES

service mark. In December 2008, Defendant THG Restaurant Group, LLC ("THG") entered into a franchise agreement (the "Franchise Agreement") to operate a POPEYES restaurant at 7617 S. Racine Avenue, Chicago, Illinois (the "Racine Ave. Restaurant"). In connection with the Franchise Agreement, Defendant Woodrow A. Hall executed a personal guaranty of all THG's obligations under that agreement. THG also entered into franchise agreements with AFC to operate seven other POPEYES restaurants in the Chicago area. The Franchise Agreement provides that THG pay AFC a "recurring, non-refundable royalty fee of five percent (5%) of Gross Sales . . ." (Compl., Ex. 1.) Further, the agreement requires THG to pay an advertising fee not to exceed 3% of THG's gross sales. Id. Finally, the Franchise Agreement provides THG a 30-day period to cure any default. If THG fails to cure the default within 30 days, AFC may terminate the Franchise Agreement.

On April 2, 2009, AFC sent THG a notice of default claiming that THG had failed to make certain payments under the Franchise Agreement. On April 24, 2009, AFC and THG entered into a payment plan (the "Payment Plan") pursuant to which THG agreed to pay past-due amounts owed under the Franchise Agreement according to a schedule of payments. In June 2009, THG closed five POPEYES locations in Chicago. As a result, AFC terminated the franchise agreements for those five closed locations. The Racine Ave. Restaurant remained open, however. In late June 2009,

THG filed an action in Fulton County Superior Court (the "Fulton Complaint") challenging AFC's termination of the franchise agreements for the five closed POPEYES locations.

On July 2, 2009, AFC sent THG a notice of default regarding the Racine Ave. Restaurant. The notice claimed that THG had failed to make royalty and advertising payments under the Franchise Agreement and had failed to make payments under the Payment Plan. In August 2009, THG amended the Fulton Complaint to allege that the Payment Plan was no longer enforceable (the "Amended Fulton Complaint").

Between November 2009 and April 2010, AFC sent THG three additional notices of default regarding the Racine Ave. Restaurant. Finally, on June 7, 2010, AFC terminated the Franchise Agreement. The notice of termination demanded that THG cease using the POPEYES marks and comply with the post-termination provisions set forth in the Franchise Agreement. (See Comp., Ex.1.) After receiving the notice of termination, AFC alleges that THG continued using the POPEYES mark and refused to comply with the post-termination provisions. On June 9, 2010, AFC filed this action. On June 18, 2010, THG amended the Fulton Complaint to add claims related to AFC's termination of the Franchise Agreement (the "Second Amended Fulton Complaint").

In its Complaint [Doc. 1], AFC seeks a declaration that the Franchise Agreement was properly terminated. AFC also seeks damages and injunctive relief for breach of contract, unjust enrichment, federal and common law trademark infringement, and federal and common law unfair competition. See 15 U.S.C. § 1114; 15 U.S.C. § 1125(a). On June 14, 2010, the Court entered a temporary restraining order against THG and Hall [Doc. 8]. On June 30, 2010, the Court entered a preliminary injunction against the Defendants [Doc. 22]. The preliminary injunction prohibits the Defendants from using the POPEYES mark or operating the Racine Ave. Restaurant [Doc. 22].

The Defendants have filed a Motion to Dismiss [Doc. 15]. The Defendants argue that this Court should abstain from jurisdiction because the same issues are currently being litigated in Fulton County Superior Court. The Defendants have also filed a Motion to Stay the Preliminary Injunction Pending Appeal [Doc. 30]. The Defendants argue that the June 30 preliminary injunction was improperly granted because the Court did not require AFC to post a bond. See FED. R. CIV. P. 65. Finally, the Plaintiff has filed a Motion for an Order to Show Cause [Doc. 35]. The Plaintiff argues that the Defendants have violated the preliminary injunction by continuing to display POPEYES trademarks and service marks at the Racine Ave. Restaurant.

II. <u>Motion to Dismiss for Lack of Subject Matter Jurisdiction Standard</u>

A complaint should be dismissed under Rule 12(b)(1) only where the court lacks jurisdiction over the subject matter of the dispute. FED. R. CIV. P. 12(b)(1). Attacks on subject matter jurisdiction come in two forms: "facial attacks" and "factual attacks." <u>Garcia v. Copenhaver, Bell & Assocs., M.D.'s</u>, 104 F.3d 1256, 1261 (11th Cir. 1997); <u>Lawrence v. Dunbar</u>, 919 F.2d 1525, 1528-29 (11th Cir. 1990). Facial attacks "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." <u>Lawrence</u>, 919 F.2d at 1529 (<u>quoting</u> <u>Menchaca v. Chrysler Credit</u>, 613 F.2d 507, 511 (5th Cir. 1980)). On a facial attack, therefore, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion. <u>Williamson v. Tucker</u>, 645 F.2d 404, 412 (5th Cir. 1981).

"'Factual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" <u>Lawrence</u>, 919 F.2d at 1529 (<u>quoting</u> <u>Menchaca</u>, 613 F.2d at 511). The presumption of truthfulness does not attach to the plaintiff's allegations. <u>Id.</u> Further, "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." <u>Scarfo v. Ginsberg</u>, 175 F.3d 957, 960-61 (11th Cir. 1999).

III. Discussion

A.    The Defendants' Motion to Dismiss

The Defendants contend that this Court should abstain from exercising jurisdiction. The doctrine of abstention permits a district court to decline or postpone the exercise of its jurisdiction when there is a concurrent state court action concerning the same matter.[1] Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976). This doctrine "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Id. In Colorado River, the Court set forth a list of factors to consider, including: "(1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights." Ambrosia Coal & Const. Co. v. Pages Morales, 368 F.3d 1320, 1331 (11th Cir. 2004) (citing American Bankers Ins. Co. of Fla. v. First State Ins. Co., 891 F.2d 882, 884 (11th Cir. 1990)). "[T]he factors must be considered flexibly and pragmatically, not as a 'mechanical checklist.'" Ambrosia Coal, 368 F.3d at 1332 (quoting Moses H. Cone Memorial Hosp. v.

---

[1] In their Motion to Dismiss, the Defendants cite several abstention doctrines. In their Reply Brief, however, the Defendants concede that the Colorado River doctrine applies here. (Defs.' Br. in Supp. in Supp. of Defs.' Mot. to Dismiss, at 3.) Thus, the Court only addresses Colorado River abstention.

Mercury Const. Corp., 460 U.S. 1, 16 (1983)). Further, "the abstention inquiry must be 'heavily weighted in favor of the exercise of jurisdiction.'" Id.

Here, the first factor does not apply. Neither court has assumed jurisdiction over property. Similarly, the second factor does not favor abstention. The convenience factor "should focus primarily on the physical proximity of the federal forum to the evidence and witnesses." Ambrosia Coal, 368 F.3d at 1332 (citing American Bankers, 891 F.2d at 885). Here, the Fulton County Courthouse is no more convenient than the federal courthouse. The two are located less than one mile apart.

Further, the third factor does not compel abstention here. The Defendants note that to recover on its Lanham Act claims, AFC must show that it properly terminated the Franchise Agreement. See Computer Currents Publ'g v. Jaye Commc'ns, Inc., 968 F. Supp. 684, 688 (N.D. Ga. 1997) (to obtain preliminary injunction on trademark claims, plaintiff must show that "franchisor properly terminated the franchise agreement."). The Franchise Agreement, the Defendants argue, is already being litigated in Fulton County Superior Court. Thus, ongoing litigation in state and federal court risks inconsistent results and piecemeal litigation.

In Ambrosia Coal, the plaintiff filed suit in federal court alleging state law and RICO Act claims arising from a settlement agreement. Ambrosia Coal, 368 F.3d at 1325. The defendants argued that the federal court should abstain from jurisdiction

because a pending state court suit was already litigating the validity of the same settlement agreement. Id. at 1330. The district court abstained from jurisdiction and the Eleventh Circuit reversed. Id. at 1334. The court noted that "[o]n the district court's misguided reasoning, the third Colorado River factor would seemingly support abstention in every federal case that has a parallel state case." Id. at 1333. Thus, the "factor concerning the avoidance of piecemeal litigation does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious." Id. The court found that "[a]lthough the dual proceedings in this instance will likely result in some unremarkable repetition of efforts and possibly some piece-by-piece decision-making, there is no indication that piecemeal litigation poses any greater waste or danger here than it does in the vast majority [of] federal cases with concurrent state counterparts." Id.

Here, although concurrent state and federal suits may lead to some "repetition of efforts," the Defendants have not shown that there is a greater risk of piecemeal litigation than "in the vast majority [of] federal cases with concurrent state counterparts." Id. Like Ambrosia, this "case boils down to a dispute over the validity of a contract that raises none of Colorado River's property-specific concerns." Id. (noting that "[i]n stark contrast to Colorado River, this case neither turns on a federal

statute designed with the intent of avoiding piecemeal litigation nor involves claims against 1,000 parties.").

Further, AFC argues that the Defendants failed to make advertising and royalty payments under the Franchise Agreement. These claims are not before the state court. Although related, the Plaintiff's claims for royalty and advertising payments arise from the Franchise Agreement, not the Payment Plan being litigated in state court. Thus, these claims pose no threat of piecemeal litigation. Finally, AFC cannot be compelled to assert its Lanham Act claims in state court. If the state court finds that the Plaintiff properly terminated the Franchise Agreement, AFC may litigate its Lanham Act claims in yet another proceeding. "Consequently, dismissal of this action will only delay the resolution of plaintiff's claim; it will not avoid its piecemeal consideration." Atlantic Mutual Ins. Co. v. Killearn, Inc., No. 06-CV-0308, 2007 U.S. Dist. LEXIS 61718, at *12 (N.D. Ga. August 21, 2007) (citing American Mfrs. Mut. Ins. Co. v. Stone, 743 F.2d 1519, 1525 (11th Cir. 1984)). Thus, even though AFC must show that it properly terminated the Franchise Agreement before it can recover on its federal claims, the risk of piecemeal litigation does not compel abstention.

Similarly, the fourth factor does not support abstention. The Defendants note that the Fulton Complaint was filed in June 2009, almost a year before AFC filed this suit. Further, the Defendants argue that in August 2009, before AFC filed this

Complaint, the Defendants amended the Fulton Complaint to include claims arising from the Payment Plan.[2]  The Plaintiff, however, argues that the Amended Fulton Complaint did not expressly include claims relating to the Racine Ave. Restaurant until it was amended on June 18, 2010, nine days after AFC filed this suit.

In this case, however, the timing of the parties' filings is not dispositive.  The fourth Colorado River factor "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."  Moses H. Cone, 460 U.S. at 21.  Even if the Amended Fulton Complaint presented the same issues being litigated here, the state court has made virtually no progress in deciding those issues.  This Court has already conducted an evidentiary hearing and issued a TRO and preliminary injunction.  For this reason, the fourth factor does not support abstention.

The fifth Colorado River factor does not favor abstention here.  The Defendants contend that this suit is a matter of state contract law.  Indeed, the validity of the Payment Plan and Franchise Agreement will be determined by state law.  As in Ambrosia Coal, however, AFC has asserted Lanham Act violations that implicate

---

[2]Although the Amended Fulton Complaint did not address the Racine Ave. Restaurant specifically, the Racine Ave. Restaurant was part of the Payment Plan.

federal law.[3] See Ambrosia Coal, 368 F.3d at 1334 ("Since Ambrosia has asserted RICO claims, we must assume at present that this case travels on both state and federal law."). Further, as in Ambrosia Coal, this suit does "not involve[ ] *complex* questions of state law that a state court might be best suited to resolve." Id. (citing Noonan South, Inc. v. County of Volusia, 841 F.2d 380, 382 (11th Cir. 1988)) (emphasis added). Finally, to the extent that state law controls, the Defendants argue that Illinois state law governs this case. (Defs.' Reply in Supp. of Mot. to Dismiss, at 1.) If Illinois franchise law indeed applies, the Defendants have not explained why a Georgia court is more capable of applying Illinois law than this Court. Thus, the fifth factor does not favor abstention. Finally, the sixth factor does not apply. Both the state forum and this Court are equally capable of protecting the parties' rights. For these reasons, the Court will not abstain from jurisdiction in this case.

B.   The Defendants' Motion to Stay

The Defendants argue that the Court should stay the June 30th preliminary injunction pending appeal of that injunction. Federal Rule of Civil Procedure 62(c) provides that:

> While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court

---

[3]The Defendants seem to question the sincerity of AFC's Lanham Act claims. The Defendants, however, have offered no evidence that these claims are pretextual.

> may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

FED. R. CIV. P. 62(c). To stay the preliminary injunction pending appeal, the Defendants must show "a likelihood of success on the merits [of the appeal], irreparable injury if relief is not afforded, no substantial harm to other interested parties, and no harm to the public interest." SunAmerica Corp. v. Sun Life Assurance Co., 890 F. Supp. 1559, 1584 (N.D. Ga. 1994).

Here, the Defendants have addressed only the first factor. Specifically, the Defendants contend that this Court abused its discretion by granting the preliminary injunction without requiring AFC to post a bond. Federal Rule of Civil Procedure 65(c) states that:

> The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

FED. R. CIV. P. 65(c). Thus, a cursory reading of Rule 65 implies that the movant must post a bond whenever the court issues a preliminary injunction. In this circuit, however, "the amount of security required by the rule is a matter within the discretion of the trial court . . . [, and] the court may elect to require no security at all." BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC, 425 F.3d 964, 971 (11th Cir. 2005) (quotation marks omitted); see also University Books and

Videos, Inc. v. Metropolitan Dade County, 33 F. Supp. 2d 1364, 1374 (S.D. Fla. 1999) (noting that "courts have held that security is not required . . . when the party seeking the injunction has a high probability of succeeding in the merits of its claim."). In AT&T Mobility LLC v. National Association for Stock Car Auto Racing, 487 F. Supp. 2d 1370, 1382 (N.D. Ga. 2007), *rev'd on other grounds*, 494 F.3d 1356 (11th Cir. 2007), the district court did not require the plaintiff to post a bond pursuant to a preliminary injunction. The court reasoned that "[i]n light of the size and resources of plaintiff, the Court concludes that there is no reasonable basis for concern that plaintiff could not satisfy any judgment that might ultimately be entered in this case." Id.

Here, the Court considered Rule 65's security requirement but did not require AFC to post a bond. As in AT&T, the Court reasoned that "[t]here is no need for the imposition of a preliminary injunction bond in this case. AFC's annual revenues exceed $100 million, and it is able to pay any judgment that may be entered against it [if] this injunction is ultimately held to have been entered wrongfully." (Prelim. Inj., ¶ 9.) Thus, even if the Defendants had addressed the other elements necessary for this Court to stay the preliminary injunction, the Defendants have not shown a likelihood of success on the merits of their appeal. For this reason, the Court will not stay the preliminary injunction.

C.  The Plaintiff's Motion for an Order to Show Cause

AFC argues that the Defendants are in contempt of the June 30th preliminary injunction. Specifically, the Plaintiff claims that the Defendants have violated the injunction by continuing to display the POPEYES marks at the Racine Ave. Restaurant. Courts "will make a finding of civil contempt–that is, willful disregard of the authority of this Court–only upon a showing that the alleged contempt is *clear and convincing*." Georgia Power Co. v. N.L.R.B., 484 F.3d 1288, 1291 (11th Cir. 2007). Further, the court "construe[s] any ambiguities or uncertainties in . . . a court order in a light favorable to the person charged with contempt." Id. (citing NBA Props., Inc. v. Gold, 895 F.2d 30, 32 (1st Cir. 1990)).

Here, the June 30 preliminary injunction prohibits the Defendants from:

> 1. using the POPEYES Marks or any trademark, service mark, or trade name confusingly similar thereto;
>
> 2. operating a restaurant located at 7617 S. Racine Avenue, Chicago, Illinois as a POPEYES restaurant, and representing to the public in any way that they are franchisees of the POPEYES franchise system;
>
> 3. using by advertising or in any manner whatsoever, any menus, recipes, confidential food for formulae, equipment, methods, procedures, and the techniques associated with the POPEYES System or with POPEYES Marks;
>
> 4. operating a restaurant or other businesses using any reproduction, counterfeit, copy, or colorable imitation of the POPEYES Marks in conjunction with such restaurant or other

>     business which is likely to cause confusion or mistake or to deceive.

It is undisputed that the Defendants closed the Racine Ave. Restaurant as soon as the Court issued a temporary restraining order on June 14, 2010. AFC argues, however, that by displaying the POPEYES marks on signs at the Racine Ave. Restaurant, the Defendants violated section (1) of the preliminary injunction prohibiting use of the POPEYES marks.

The Plaintiff's argument is without merit. First, the Defendants have not "used" the POPEYES marks for any purpose since closing the Racine Ave. Restaurant. The POPEYES signs were on display before this Court issued an injunction. At this point, the Defendants are not using the marks to promote a restaurant for commercial gain. Indeed, AFC has not suggested any purpose for which the Defendants could be using the POPEYES marks. Further, to the extent that the phrase "using the POPEYES Marks" is ambiguous, this ambiguity must be resolved in the Defendants' favor. See Georgia Power, 484 F.3d at 1291 ("[W]e will construe any ambiguities or uncertainties in . . . a court order in a light favorable to the person charged with contempt."). The preliminary injunction does not "set forth in specific detail an unequivocal command" to remove the POPEYES signage. See Baddock v. Villard (In re Baum), 606 F.2d 592, 593 (5th Cir. 1979) (noting that in order to hold party in contempt, court order must set forth clear unequivocal command). Thus, a reasonable

reading of the injunction merely prohibits the Defendants from using the POPEYES marks for their own benefit. The Plaintiff has not shown by clear and convincing evidence how displaying signs at a closed restaurant benefits the Defendants in any way. For these reasons, the Defendants have not violated the preliminary injunction.

## IV. Conclusion

For the reasons set forth above, the Court DENIES the Defendants' Motion to Dismiss [Doc. 15], DENIES the Defendants' Motion to Stay the Preliminary Injunction Pending Appeal [Doc. 30], and DENIES the Plaintiff's Motion for an Order to Show Cause [Doc. 35].

SO ORDERED, this 2 day of November, 2010.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge